UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MICHAEL S. ROMA,

**REPORT AND
RECOMMENDATION**

                    Plaintiff,

06-CV-0025T(M)

v.

JO ANNE B. BARNHART,
Commissioner of Social Security,

                    Defendant.

---

          This case was referred to me by Hon. Michael A. Telesca to hear and report in

accordance with 28 U.S.C. §636(b)(1)(B) (Dkt. #12).  Before me are the parties' motions for

judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) (Dkt. ##5, 6).  For the following

reasons, I recommend that the Commissioner's motion be DENIED, and that plaintiff's cross-

motion be DENIED in part and GRANTED in part.


          **PROCEDURAL BACKGROUND**

          Pursuant to 42 U.S.C. §405(g), plaintiff seeks review of the final decision of the

Commissioner of Social Security denying his application for Disability Insurance Benefits and

Supplemental Security Income (Dkt. #1).  Plaintiff filed applications for Social Security Income

and Disability Insurance Benefits on March 17, 2004 (T40-43, 57).[1]  Both claims were initially

denied (T23-25).  Plaintiff requested an administrative hearing on June 4, 2004 (T26-27).  A

---

          [1]      References to "T" are to the certified transcript of the administrative record filed by the
defendant in this action.

hearing was held on June 21, 2005 before ALJ J. Robert Brown (T11, 145-168).   At the hearing,

plaintiff was represented by Kenneth R. Hiller, Esq. (T18, 21).  On August 13, 2005, ALJ Brown

issued a decision granting plaintiff's disability claim (T15).  The ALJ found that plaintiff met the

disability insured status requirements from November 18, 2002 through April 16, 2004, but not

thereafter (T16).  The ALJ's determination became the final decision of the Commissioner when

the Appeals Council denied plaintiff's request for review on December 7, 2005 (T4-6).  Plaintiff

alleges that the Commissioner's determination that he was not disabled after April 16, 2004 is

erroneous (Dkt. #5, p. 1).


## THE ADMINISTRATIVE RECORD

**A.      Relevant Medical Evidence**

      **1.      Medical Evidence Prior to April 16, 2004**

On April 8, 2003 and August 25, 2003, Dr. Dudzik, plaintiff's chiropractor,

completed progress reports for the Worker's Compensation Board (T136, 139).  In his April 18,

2003 progress report, Dr. Dudzik diagnosed plaintiff with a "lumbar disc injury with subluxation

of L5/S1 and lower extremity radiculopathy" (T139) and reported that his exam revealed a

"painful compression test of the low back and hips, limited range of motion of the lumbar spine

and palpable spasms of the paraspinal erector muscles while sitting and standing" (Id.).

Dr. Dudzik's August 25, 2003 progress report indicated that plaintiff was "totally

disabled" at that time, but that he had "not reached maximum improvement", and that "[f]urther

testing will allow better decision making with regards to his eventual return to work" (T136).

On April 23, 2003, lumbosacral spine X-Rays showed degenerative disc disease at L5-S1 and degenerative joint disease at L3-L4, L4-L5, L5-S1 levels and at the sacroiliac joint (T138). On October 6, 2003, an MRI of plaintiff's lumbar spine revealed degenerative disc disease at the L5-S1 level, small to moderate right paracentral disc herniations at L4-L5 and T11-T12 levels, and a mild disc bulge at L2-L3 (T101-102).

On November 4, 2003, plaintiff was examined by a chiropractor, Dr. Geoffrey Gerow, an independent examiner on behalf of the Worker's Compensation Board (T113-119), who diagnosed plaintiff with disc herniation at the L5-S1, L4-L5, and T11-T12 levels and a lumbosacral sprain/strain (T117). Dr. Gerow opined that plaintiff had an overall partial disability for Worker's Compensation purposes (Id.). Dr. Gerow also found that plaintiff had reached maximum improvement under chiropractic care (T118). He found plaintiff capable of performing light duty work, with a lifting restriction of twenty pounds (Id.).

On November 19, 2003, Dr. Dudzik referred plaintiff to neurologist Dr. Anthony Avellanosa, M.D. (T142). Dr. Avellanosa diagnosed plaintiff with herniated discs at L5-S1, L4-5, and T11-T12 levels, degenerative lumbar disc disease, and lumbar spine sprain (T144). Dr. Avellanosa recommended that plaintiff lift no more than five pounds, and that "repetitive flexion- extension movements of the lumbar spine should be avoided" (Id).

2.      **Medical Evidence After April 16, 2004**

On May 20, 2004, Dr. Dudzik completed an residual functional capacity assessment ("RFC") indicating that while he could provide systematic relief, after two years of treatment plaintiff was permanently disabled (T130). Dr. Dudzik estimated that plaintiff could

occasionally lift up to 10 pounds, frequently carry 10 pounds, and could sit and stand for a total of four hours each during an eight-hour workday, but continuously for only 30 minutes (T12, 130).

A second physical capacities assessment was completed by Dr. Dudzik on April 26, 2005. At that time, Dr. Dudzik found that plaintiff could sit for a total of two to three hours during an eight-hour workday, and continuously for two hours (T12, 140). Plaintiff could also stand for a total of one to two hours during an eight-hour workday, and continuously for no longer than two hours. Further, he determined that plaintiff would need to lie down two hours out of an eight-hour workday to relieve pain (Id.). He also concluded that plaintiff could bend occasionally, but was unable to squat, crawl, or climb (Id.). Dr. Dudzik further found that pain and medications would frequently significantly impair and/or preclude simple work tasks (Id.). Ultimately, he concluded that plaintiff was disabled from full-time competitive employment, and had been so since 2001 (Id.).

### 3.    Consultative Examinations

A consultative medical evaluation was completed by Dr. Fenwei Meng, M.D. on April 16, 2004. Plaintiff reported to Dr. Meng that he was able to bathe, dress, clean, shop, cook, and watch television (T13, 120). Dr. Meng diagnosed plaintiff with lumbar spine disc bulging and herniations (T122). Dr. Meng reported plaintiff's lumbar spine had full flexion and flexing was done slowly with complaints of back pain (T13, 122). Further, Dr. Meng determined that plaintiff's lumbar spine showed "moderate to severe limitation for bending, twisting, heavy lifting, and extension" (T122). He found that plaintiff's cervical spine had full range of motion

-4-

(T120).  Dr. Meng opined that plaintiff was mildly to moderately limited from "prolonged standing, walking, and running" (Id.).

**B.      Administrative Hearing conducted on June 21, 2005.**

      **1.      Plaintiff's Testimony**

Plaintiff was forty-three years old at the time of the hearing and had a tenth-grade education (T12, 148).  He lived at home with his father (T148).  Plaintiff's past work experience included being a driver, janitor, and a lumber worker (T12, 150).

Plaintiff injured his back on January 28, 2000 while at work (T113, 151), and alleged that he became disabled on November 18, 2002 when he re-injured his back and "couldn't move anymore."  Thereafter, plaintiff began treatment with Dr. Dudzik for his injury (T114, 151-152).

Plaintiff testified that he could lift 10 pounds, stand and sit for 30 minutes each, and walk approximately two blocks (T157-158).  To alleviate his back pain, plaintiff would lay flat for most of the day, and testified that he could not perform an eight-hour a day job without having four hours to lay down (T158-160).

      **2.      Vocational Expert**

Vocational expert, James Ryan, Ph.D., classified plaintiff's past work as light exertional.  Based upon ALJ Brown's hypothetical, Dr. Ryan found that there were a number of jobs that this individual could perform in the national economy including assembly worker, production line worker, and packer (T164-165).  Further, Dr. Ryan opined that moderate to

severe limitations for bending and twisting would limit an individual to sedentary jobs including telemarket worker, dispatcher, and inspector (T165).  He opined that a mild to moderate limitation for standing would only minimally impact an individual's ability to perform sedentary jobs (T165-166).


**C.     ALJ Brown's Decision dated August 13, 2005**

ALJ Brown undertook the prescribed five step sequential evaluation and found that plaintiff had satisfied the first four steps (T15).  The ALJ determined specifically that (1) plaintiff has "not engaged in substantial gainful activity" since the onset of disability on November 18, 2002; (2) "the medical evidence establishes that the claimant has the following "severe" impairments: lumbar disc syndrome;" (3) plaintiff has "no impairment or combination of impairments that meet or equal the criteria of any impairment" listed in 20 C.F.R.  Part 404, Subpart P, Appendix 1; and (4) plaintiff "is unable to perform the requirements of his past relevant work" (T15).

At the fifth step of the sequential evaluation, ALJ Brown found that plaintiff was disabled from November 18, 2002 through April 16, 2004 because his "residual functional capacity for the full range of sedentary work was reduced by additional limitations" (T16).  During this period he was "not able to sit, stand, or walk a total of 8 hours in an 8-hour period" (Id.).  "Beginning April 17, 2004, the claimant was able to sit, stand and walk for four hours, each, and [sic] and 8-hour workday, within interruptions every thirty minutes.  He could occasionally lift and carry objects weighing up to 25 pounds.  He was able to occasionally bend and squat, but was not able to crawl or climb.  He has moderate limitations driving automotive

-6-

equipment." (T16).  ALJ Brown went on to find that "the vocational expert testified that there were a significant number of jobs in existence in the national economy that claimant could have performed.  These jobs are defined as an assembly worker, production line worker, and packer . . . .  Beginning April 17, 2004, medical-vocational rule 201.24 directs a finding of not disabled."  (T16).

## DISCUSSION AND ANALYSIS

**A.      Scope of Judicial Review**

The Social Security Act states that, upon review of the Commissioner's decision by the district court, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ."  42 U.S.C. §405(g).  Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion".  Consolidated Edison Co. of New York, Inc. v. NLRB, 305 U.S. 197, 229 (1938).

Under this standard, the scope of judicial review of the Commissioner's decision is limited.  This Court may not try the case *de novo,* nor substitute its findings for those of the Commissioner.  Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984).  Rather, the Commissioner's decision is only set aside when it is based on legal error or is not supported by substantial evidence in the record as a whole. Balsamo v. Chater, 142 F. 3d 75, 79 (2d Cir. 1998).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the Court's independent analysis of the evidence may differ" from that of the Commissioner.  Martin v. Shalala, 1995 WL 222059, *5 (W.D.N.Y. 1995) (Skretny, J.).

However, before deciding whether the Commissioner's determination is supported by substantial evidence, the court must first determine "whether the Commissioner applied the correct legal standard". <u>Tejada v. Apfel</u>, 167 F.3d 770, 773 (2d Cir. 1999). "Failure to apply the correct legal standards is grounds for reversal." <u>Townley</u>, <u>supra</u>, 748 F. 2d at 112.

**B.      The Disability Standard**

The Social Security Act provides that a claimant will be deemed to be disabled "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §1382c(a)(3)(A).  The impairments must be  "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §1382c(a)(3)(B).

The determination of disability entails a five-step sequential evaluation process:

"1.      The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.

2.      If not, the Commissioner considers whether the claimant has a 'severe impairment' which limits his or her mental or physical ability to do basic work activities.

3.      If the claimant has a 'severe impairment,' the Commissioner must ask whether, based solely on medical evidence, claimant has an impairment listed in Appendix 1 of the regulations.  If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without considering

vocational factors such as age, education, and work experience.

4.      If the impairment is not 'listed' in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.

5.      If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform.  The Commissioner bears the burden of proof on this last step, while the claimant has the burden on the first four steps."

Shaw v. Chater, 221 F. 3d 126, 132 (2d Cir. 2000); see 20 C.F.R. §§404.1520, 416.920.


**C.      Would ALJ Brown's RFC assessment allow plaintiff to perform any of the exertional ranges of work defined in the Grids?**

Plaintiff argues that ALJ Brown's RFC assessment would not permit plaintiff to perform sedentary work (Dkt. #5, p.5-6).  The Commissioner responds that ALJ Brown correctly relied on Grid Rule 201.24, as well as the testimony of Dr. Ryan  (Dkt. #9, p. 2).

At the fifth step of sequential evaluation, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. §423(d)(2)(A); 20 C.F.R. §404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460 (1983).

"In meeting [his] burden of proof on the fifth step of the sequential evaluation process . . . , the Commissioner, under appropriate circumstances, may rely on the medical-vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2, commonly

referred to as 'the Grid.' The Grid takes into account the claimant's residual functional capacity in conjunction with the claimant's age, education and work experience. Based on these factors, the Grid indicates whether the claimant can engage in any other substantial gainful work which exists in the national economy. Generally the result listed in the Grid is dispositive on the issue of disability." Zorilla v. Chater, 915 F.Supp. 662, 667 (S.D.N.Y. 1996). "The Grid classifies work into five categories based on the exertional requirements of the different jobs. Specifically, it divides work into sedentary, light, medium, heavy and very heavy, based on the extent of requirements in the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, and pulling." Id. at 667 n. 2; see 20 C.F.R. §404.1567. "Taking account of the claimant's residual functional capacity, age, education, and prior work experience, the Grid yields a decision of 'disabled' or 'not disabled'." Snipe v. Barnhart, 2006 WL 2390277, *16 (S.D.N.Y. 2006).

However, where the claimant's actual characteristics do not fit squarely into the Grid, the ALJ must then "introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform." Bapp v. Bowen, 802 F. 2d 601, 603 (2d Cir. 1986).

Grid Rule 201.24 is found in Table No. 1, which applies to maximum sustained work capability limited to sedentary work. Sedentary work is defined as work that

> "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met". 20 C.F.R. 404.1567(a).

In turn, SSR 83-10 provides that "at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours out of an 8-hour workday, and sitting should generally total approximately 6 hours out of an 8-hour workday". 1983 WL 31251, *5 (S.S.A.).

"By its very nature 'sedentary' work requires a person to sit for long periods of time even though standing and walking are occasionally required." Carroll v. Secretary of Health and Human Services, 705 F. 2d 638, 643 (2d Cir. 1983). "Sedentary work contemplates substantial sitting." Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984). The concept of sedentary work may not include alternating between sitting and standing. See Ferraris, supra, 728 F. 2d at 587. If "plaintiff cannot perform a full range of sedentary work [he] must be evaluated on an individual basis rather than by a mechanical application of the grid rules." Gonzalez v. Barnhart, 491 F. Supp. 2d 329, 338 (W.D.N.Y. 2007) (Telesca, J.).

Applying these considerations, ALJ Brown's conclusion regarding plaintiff's ability to perform sedentary work and his determination that plaintiff is not disabled pursuant to Grid Rule 201.24 is inconsistent with his finding that "beginning April 17, 2004, the claimant was able to sit, stand, and walk for *4 hours*, each, and [sic] an 8-hour workday, with interruptions every 30 minutes" (T16) (emphasis added). Because it does not appear that plaintiff had the RFC to perform the full range of sedentary work, it was improper for ALJ Brown to apply Grid Rule 201.24 in finding him not disabled after April 16, 2004.

While I recognize that ALJ Brown also found that "the vocational expert testified that there were a significant number of jobs in existence in the national economy the claimant could have performed [including] assembly worker, production line work, and packer" (T16), I

cannot confirm the hypothetical limitations upon which this opinion was based because relevant parts of the transcript were inaudible (T164-65), which in and of itself provides a basis to remand.  See Antonetti v. Barnhart, 399 F. Supp. 2d 199, 200 (W.D.N.Y. 2005) (Larimer, J.) (remanding where the hearing transcript contained numerous inaudible references).


**D.      Was the hypothetical question posed to Dr. Ryan flawed?**

Plaintiff argues that the hypothetical posed to Dr. Ryan was flawed because it did not include the restriction of "being able to stand or walk for only four hours out of an eight-hour day"  and incorrectly indicated that plaintiff could lift 10 pounds frequently, whereas Dr. Dudzik's May 20, 2004 RFC assessment indicated that plaintiff could only lift 10 pounds occasionally (Dkt. #5, p. 6).  The Commissioner argues that Dr. Dudzik's May 20, 2004 RFC assessment noted that plaintiff could frequently carry 10 pounds and "the ability to stand or walk for four hours each is commensurate with the ability to perform light work" (Dkt. #9, p. 3).

A vocational expert's testimony is "only useful if it addresses whether the particular claimant, with his limitations and capabilities, can realistically perform a particular job."  Aubeuf v. Schweiker, 649 F. 2d 107, 114 (2d Cir. 1981).   "Vocational testimony elicited by hypothetical questions that fail to relate with precision to the physical and mental impairments of a claimant is not substantial evidence on which an ALJ may base a decision." Mathews v. Barnhart, 220 F. Supp. 2d 171, 175 (W.D.N.Y. 2002) (Larimer, J.).

Here, ALJ Brown relied on the findings of vocational expert Dr. Ryan in determining that plaintiff's RFC was limited to sedentary exertion, and that there were jobs in the national economy that he could perform. (T15).  Dr. Ryan described plaintiff's past work as

unskilled with light to medium exertion (T164).  ALJ Brown then posed the following

hypothetical:

> Now, Mr. Roma worked [INAUDIBLE] back in April of '04.
> And the doctor came up with this medical statement and he said
> gross activity has mild limitations for heavy lifting due to back
> condition.  Assuming hypothetically that would eliminate a return
> to heavy work [INAUDIBLE] type job.  I'm assuming
> hypothetically that this allows for a person to lift 10 pounds
> frequently and 20 pounds occasionally. [INAUDIBLE] (T164)

Based on the audible portions of the transcript, Dr. Ryan appeared to respond that in addition to

plaintiff's past relevant work, an individual with these limitations could work as an assembly

worker, production line worker, and packer (T164-165).  ALJ Brown asked Dr. Ryan whether

moderate to severe limitations on bending, twisting, heavy lifting and extensions would impact

his testimony.  Dr. Ryan responded that these limitations would preclude light exertional work,

but that the individual would be able to perform sedentary jobs such as a telemarketer,

dispatcher, or inspector (T165).  ALJ Brown also asked Dr. Ryan what further impact mild or

moderate restrictions for prolonged standing, walking and running  have on his testimony (Id.).

Dr. Ryan responded that the examples of sedentary work "would be minimally impacted by the

additional limitations" (T166).

During examination by plaintiff's counsel, Dr. Ryan testified that the

telemarketer, dispatcher, and inspector positions were based on a finding that the individual

could perform a limited range of sedentary work  (T166).  He also testified that sedentary work

generally requires an individual to have the capacity to sit six hours out of an eight-hour

workday (Id.).

Despite the fact that ALJ Brown found that "beginning April 17, 2004, the claimant was able to sit, stand, and walk for 4 hours, each, and [*sic*] an 8-hour workday" (T16), the hypothetical posed by ALJ Brown to Dr. Ryan - to the extent the testimony was audible - did not include this restriction (T164).   However, when Dr. Ryan was questioned by plaintiff's counsel, he testified that sedentary work generally requires an individual to be able to sit six hours out of an eight-hour workday (T166).

Because the audible portions of the hypothetical question posed to Dr. Ryan did not include all of plaintiff's limitations and restrictions, I find that his testimony cannot constitute substantial evidence to support a conclusion of disability.  See Kuleszo v. Barnhart, 232 F. Supp.2d 44, 57 (W.D.N.Y. 2002) (Siragusa, J.).  Moreover, as discussed supra, this case should be remanded solely because relevant portions of the hearing transcript were inaudible. see Antonetti, supra, 399 F. Supp. 2d at 200.


**E.     Did ALJ  Brown fail to explain the weight he gave to the conflicting medical evidence?**

Plaintiff argues that ALJ Brown erred by not explaining the weight that he gave to the conflicting medical evidence between Dr. Dudzik's May 20, 2004 and April 26, 2005 RFC assessments (Dkt. # 5, p. 7).  The Commissioner responds that Dr. Dudzik's April 26, 2005 RFC assessment was not supported by treatment records, and that Dr. Dudzik acknowledged that he only treated plaintiff through April 1, 2004 (Dkt. #9, p. 4-5).

A chiropractor's opinion is not an acceptable medical source for the treating physician rule.  See Diaz v. Shalala, 59 F. 3d 307, 313 (2d Cir. 1995).  Nevertheless, "the

Commissioner must evaluate every medical opinion it receives, regardless of its source." <u>Pena</u> <u>v. Charter</u>, 968 F. Supp. 930, 937 (S.D.N.Y. 1997), <u>aff'd</u>, 141 F. 3d 1152 (2d Cir. 1998).

Here, ALJ Brown acknowledged Dr. Dudzik's May 20, 2004 RFC assessment, as well as his latter April 26, 2005 RFC assessment, which found plaintiff significantly more impaired. Despite the difference in Dr. Dudzik's RFC assessments and their significance, there is no indication in ALJ Brown's decision concerning the weight he gave to the April 26, 2005 assessment and why. Having apparently accepted Dr. Dudzik's earlier RFC, at minimum, ALJ Brown was obligated to explain why he disregarded his later RFC assessment.

Defendant now contends that ALJ Brown was not required to accept Dr. Dudzik's April 26, 2005 RFC assessment because he only treated plaintiff through April 1, 2004. This argument is without merit. Plaintiff testified at the June 21, 2005 administrative hearing that he was still being treated by his treating chiropractor twice a week (T152).

Therefore, on remand, the Commissioner first needs to make factual findings regarding the weight assigned to Dr. Dudzik's April 26, 2005 RFC assessment. The Commissioner also needs to properly analyze step five of the sequential evaluation in light of the RFC findings made upon remand. Any vocational expert testimony should also be based on hypothetical questions that accurately state plaintiff's limitations and RFC.

**CONCLUSION**

For these reasons, I recommend that this case be remanded to the Commissioner for further proceedings consistent with this Report and Recommendation. Pursuant to 28 U.S.C. §636(b)(1), it is hereby

ORDERED, that this Report and Recommendation be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed. R. Civ. P. 72(b) and Local Rule 72.3(a)(3).

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but was not presented to the magistrate judge in the first instance. See, e.g., Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co., 840 F. 2d 985 (1st Cir. 1988).

Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order. Thomas v. Arn, 474 U.S. 140 (1985); Wesolek v. Canadair Ltd., 838 F. 2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." Failure to comply with the provisions of

-16-

Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Report and Recommendation), may result in the District Judge's refusal to consider the objection.


**SO ORDERED.**

DATED:      March 14, 2008

 

                                JEREMIAH J. MCCARTHY

                                United States Magistrate Judge